Jacqueline M. **BUCKMILLER**,
Petitioner,

v.

**SAFEWAY STORES, INC.**, Respondent.

No. 84SC251.

Supreme Court of Colorado,
En Banc.

Nov. 17, 1986.

 

Robert Justin Driscoll, Denver, for petitioner.

Anstine and Hill, Ronald C. Hill, Richard M. Kaudy, Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Buckmiller v. Safeway Stores, Inc.*, 690 P.2d 883 (Colo. App.1984), which affirmed the trial court's denial of a rule 60(b) motion to vacate an earlier order of dismissal for failure to prosecute. The motion to vacate the order of dismissal was filed by Jacqueline M. Buckmiller, who had previously commenced a negligence action against Safeway Stores, Inc. The trial court denied Buckmiller's motion to vacate because, in its

view, the prejudice to Safeway resulting from a reinstatement of the case would outweigh any prejudice to Buckmiller from a denial of the motion. The court of appeals concluded that the trial court did not abuse its discretion in denying the motion and accordingly affirmed the judgment. We reverse the judgment of the court of appeals and remand the case with directions to return it to the trial court for further proceedings.

## I.

On August 27, 1975, Buckmiller slipped and fell in a Safeway store in Widefield, Colorado. She filed an action against Safeway in the district court of El Paso county on July 7, 1976, alleging that her fall and resulting injuries were caused by Safeway's negligent maintenance of its premises. A jury trial was originally set for September 27, 1977, but the trial date was vacated at Buckmiller's request on September 16 and no new trial date was ever obtained. After more than four years had elapsed without any progress on the case, the trial court sent notice to the parties on October 20, 1981, that the case would be dismissed for failure to prosecute unless Buckmiller showed cause within thirty days why it should not be. After Buckmiller's attorney submitted a letter from an orthopedic surgeon stating that Mrs. Buckmiller had recently undergone a spinal fusion and that the prognosis was still in doubt, the court agreed to continue the case on the docket.

Another year elapsed without progress. On November 26, 1982, the trial court again notified the parties that the case would be dismissed in thirty days unless good cause was shown. When the thirty days passed with no response from Buckmiller's attorney, the court dismissed the case on December 28, 1982. On or about that same date Buckmiller's husband personally delivered to the trial court a letter from her surgeon indicating that she was still under treatment and that a definitive prognosis could not be made for some months. On January 13, 1983, Buckmil-

ler's attorney filed a "motion not to dismiss," in which he stated that his failure to respond to the court's notice was caused by the still unresolved medical condition of his client and by other matters beyond his control. The court entered a written order denying the motion, stating as follows:

The first that was heard from [Buckmiller's attorney] was in early January, and the Court finds this to be dilatory. This case has been the oldest case in the Court's history.

The Court, therefore, finds that due diligence not being used to keep this case open, the previous order of dismissal of December 28th, 1982, stands.

Buckmiller did not learn of the dismissal of the case until May 1983. Since the applicable statute of limitations had run on her negligence claim, Buckmiller did not have the option of simply refiling the case, and therefore retained new counsel to seek reinstatement of the case. On June 22, 1983, Buckmiller's new attorney filed a motion pursuant to C.R.C.P. 60(b) to vacate the court's order of dismissal. The motion stated that gross negligence on the part of plaintiff's former attorney had been the primary cause for the dismissal, that her claim was meritorious, and that she should not be precluded from having her day in court because of her attorney's negligence.

On August 15, 1983, a hearing was held on Buckmiller's C.R.C.P. 60(b) motion. The court denied Buckmiller's request to introduce testimony concerning the attorney-client relationship between her and her former counsel, stating that "the real issue is what prejudice, if any, is suffered by the defense if this case is reinstated...." Buckmiller's attorney thereupon made a long and detailed offer of proof, stating that the testimony would have shown that Buckmiller had been hospitalized numerous times as a result of her fall and that she was in the hospital on November 26, 1982, when the court's notice of dismissal was mailed to her former attorney; that her former attorney was grossly negligent in failing to prosecute the case; that Buckmiller had simply been relying on her former

attorney to handle the case in an appropriate manner and had not been informed of the dismissal until May 1983; and that to date she had incurred expenses in the amount of approximately $100,000 as a result of seven surgical procedures which she had undergone since her fall in the Safeway store on August 27, 1975. The court accepted the uncontroverted offer, but denied Buckmiller's 60(b) motion. Although noting that Buckmiller had been wronged by the failure of her attorney to effectively prosecute the case, the court concluded that the prejudice to Safeway in its ability to defend the case outweighed the wrong suffered by Buckmiller from her attorney's ineffective representation.

Buckmiller appealed to the court of appeals. Addressing Buckmiller's claim that her attorney's gross negligence constituted excusable neglect under C.R.C.P. 60(b), the court of appeals reasoned that an attorney's gross negligence does not constitute excusable neglect if the client herself was negligent and then concluded:

> Here, in considering [Buckmiller's] motion for relief, the trial court had before it stipulated facts regarding the circumstances of the dismissal. The trial court could fairly infer that [Buckmiller] was negligent in failing to prosecute her case. Therefore, we conclude that the trial court did not abuse its discretion in denying [Buckmiller's] motion for reinstatement of her case.

690 P.2d at 886. We granted certiorari to consider whether the court of appeals erred in affirming the trial court's denial of Buckmiller's rule 60(b) motion.

## II.

C.R.C.P. 60(b) states that a court may relieve a party from a final judgment or order on grounds of excusable neglect.[1] *See, e.g., Tyler v. Adams County Department of Social Services,* 697 P.2d 29, 32 (Colo.1985); *Coerber v. Rath,* 164 Colo.

294, 302, 435 P.2d 228, 231 (1967). In this case, although the court of appeals concluded that the trial court did not abuse its discretion in denying Buckmiller's rule 60(b) motion, it failed to explicate the precise legal criteria by which it reached this conclusion. We hold that the trial court should have resolved Buckmiller's rule 60(b) motion in accordance with clearly-defined legal criteria applicable to such a motion and that its failure to do so constituted reversible error.

### A.

 It is appropriate to clarify at the outset the distinction between abuse of discretion and application of an erroneous legal standard in resolving a particular issue. In its abstract sense, judicial discretion implies the absence of any settled legal standard that controls the controversy at hand. *State v. Biggs,* 198 Or. 413, 255 P.2d 1055, 1059 (1953); *see Kujich v. Lillie,* 127 Mont. 125, 260 P.2d 383, 389–90 (1953); *Yundt v. D. & D. Bowl, Inc.,* 259 Or. 247, 486 P.2d 553, 558 (1971). To say that a court has discretion, therefore, means that the court is not bound to decide an issue one way or another, but, instead, has the power to choose between two or more courses of action, each of which is considered a permissible resolution of the question. R. Aldisert, *The Judicial Process* 743, 745 (1976). When there does exist a controlling legal standard, however, a court may not disregard that standard in favor of some other legal rule. The fact that the legal standard requires the consideration and application of several elements to the facts of a case does not alter in the least the court's obligation to decide the controversy in accordance with that standard. Thus, while a court may retain discretion in determining the weight to be given certain evidence relevant to the controlling legal criteria or in assessing the relative significance to be accorded various factors encompassed within those criteria, it must exercise that

---

1. C.R.C.P. 60(b) states in relevant part:
 (b) **Mistakes; Inadvertence; Surprise; Excusable Neglect; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect.

discretion within the framework of, rather than in disregard of, the controlling legal norm. With these preliminary comments aside, we turn to the legal standard applicable to the resolution of a rule 60(b) motion based on an allegation of excusable neglect.

### B.

██ In *Craig v. Rider*, 651 P.2d 397 (Colo.1982), we reviewed certain basic considerations which apply to the resolution of a motion to set aside an order admitting a will to probate. After noting that the underlying goal in ruling on such a motion is to promote substantial justice and that the burden is on the movant to establish the grounds for relief by clear, strong and satisfactory proof, 651 P.2d at 401–02, we extracted from our prior case law the particular legal criteria that a trial court should apply in granting or denying a motion to set aside a default judgment. Where the motion for relief is predicated on a claim of excusable neglect, *Craig* holds that the trial court should base its decision on the following three criteria: (1) whether the neglect that resulted in entry of judgment by default was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether relief from the challenged order would be consistent with considerations of equity. 651 P.2d at 402. Although we stated in *Craig* that a trial court is not required to engage in a balancing test in which one factor is set off against another, we also emphasized that the preferred procedure is to consider all three factors in a single hearing, since evidence relating to one factor might well shed light on another and consideration of all three will provide the most complete information for an informed decision. *Id.* Since the party seeking relief has the burden of establishing the grounds for relief, a trial court may deny a motion to set aside a default judgment for failure to satisfy any one of the three criteria of *Craig*.

██ Although in this case Buckmiller sought to vacate a judgment of dismissal predicated on failure to prosecute rather than to set aside a judgment of default, it is quite obvious from our decision in *Craig* that the same criteria outlined in that opinion should have been applied to this case. Implicit in *Craig* is the recognition that a motion to set aside a default under C.R. C.P. 55(c) and a motion to vacate a judgment under C.R.C.P. 60(b) on the basis of excusable neglect are sufficiently analogous to justify the application of the same standards to either motion. 651 P.2d at 401. We accordingly make explicit what is implicit in *Craig* and adopt the same three criteria as the legal standard applicable to this case.

██ We have held that a trial court, in determining whether a party has established excusable neglect under C.R.C.P. 60(b), should not impute the gross negligence of an attorney to the client for the purpose of foreclosing the client from rule 60(b) relief. *Coerber v. Rath*, 164 Colo. 294, 435 P.2d 228 (1967); *see also Zika v. Eckel*, 150 Colo. 302, 372 P.2d 165 (1962); *Dudley v. Keller*, 33 Colo.App. 320, 521 P.2d 175 (1974). We have also held that it is incumbent upon the moving party in a rule 60(b) proceeding to establish by factual averments and not simply legal conclusions that the claim previously dismissed was indeed meritorious and substantial. *Craig*, 651 P.2d at 403. Finally, in determining whether rule 60(b) relief would be consistent with equitable considerations, a trial court should take into account the promptness of the moving party in filing the rule 60(b) motion, the fact of any detrimental reliance by the opposing party on the order or judgment of dismissal, and any prejudice to the opposing party if the motion were to be granted, including any impairment of that party's ability to adduce proof at trial in defense of the claim. *Craig*, 651 P.2d at 404–05.

### III.

██ Both the trial court and the court of appeals failed to resolve the present controversy in accordance with the *Craig* criteria despite the fact that *Craig* had

been decided nine months prior to Buckmiller's filing of the rule 60(b) motion. The trial court simply determined that the prejudice to Safeway in its ability to defend outweighed the wrong suffered by Buckmiller. As we shortly discuss, possible prejudice to a party is one of the "equitable considerations" constituting the third factor in *Craig,* but it is not the only factor and is certainly not entitled to the conclusive effect attributed to it by the trial court. Likewise, the court of appeals erred when it affirmed the trial court's denial of Buckmiller's motion solely on the basis that the stipulated facts regarding the circumstances of the dismissal fairly supported an inference that the plaintiff herself was negligent in failing to prosecute her case. The trial court, however, drew no such inference. The fact that there might be some evidentiary basis in the record to support a finding of negligence on Buckmiller's part in failing to prosecute her case is not the equivalent of an actual finding by the trial court that Buckmiller was negligent.

■ Turning now to the *Craig* standard, the first factor for consideration is whether the judgment of dismissal was entered as a result of excusable neglect. We hold that, contrary to the opinion of the court of appeals, the mere existence of some negligence by Buckmiller does not serve as a per se basis to automatically deny relief under C.R.C.P. 60(b).[2] In addition to any arguable negligence by Buckmiller, the trial court must also consider the nature and extent of any negligence attributable to Buckmiller's former attorney in allowing the case to be dismissed, and must then determine, in the exercise of its fact-finding function, whether the circumstances underlying the dismissal were such as to constitute excusable neglect for purposes of Buckmiller's rule 60(b) motion. So far as the record shows, the trial court

made no determination whether the prior judgment of dismissal was entered as a result of excusable neglect on the part of Buckmiller.

Not only did the trial court fail to specifically consider the issue of excusable neglect, it made no mention in its ruling of the second factor of the *Craig* standard— whether Buckmiller adequately alleged and factually demonstrated that her claim was meritorious. Once again, the record before us gives no indication that this factor was considered. Without some ruling by the trial court on the meritoriousness of Buckmiller's claim, we can only speculate on whether the trial court gave any consideration whatever to this aspect of the *Craig* standard.

Finally, the trial court only partially addressed the last of the *Craig* criteria—the equitable considerations underlying Buckmiller's motion for rule 60(b) relief. Although the trial court did conclude in a general way that the prejudice to Safeway from granting Buckmiller's motion would outweigh any wrong to Buckmiller from denying her motion, there is no indication that it had considered such factors as the timing of Buckmiller's motion, any possible reliance by Safeway on the judgment of dismissal, and the manner in which Safeway's defense of the case might somehow have been damaged by lost evidence, the passage of time, or some other factor. Consideration of these particulars might well have altered the trial court's decision on Buckmiller's motion.

■ We do not imply that the trial court should have granted Buckmiller's rule 60(b) motion. Our only purpose is to emphasize that the trial court's failure to apply the correct legal criteria in resolving that motion was error.

**2.** We recognize that in *Weeks v. Sigala,* 32 Colo. App. 121, 509 P.2d 320 (1973), the court of appeals held that a client who himself was negligent could not claim that the gross negligence of his attorney was "excusable neglect" for purposes of a rule 60(b) motion. We reject such a categorical approach, since in our view the de-

gree of negligence attributable to the client is only one factor for a court to consider in determining whether to set aside an order or judgment on the grounds of excusable neglect predicated on the gross negligence of the client's attorney. The holding of *Weeks,* therefore, is expressly overruled.

The judgment of the court of appeals is accordingly reversed and the cause is remanded to that court with directions to return the case to the trial court for further proceedings consistent with the views herein expressed.

ERICKSON, J., dissents.

VOLLACK, J., does not participate.

ERICKSON, Justice, dissenting:

I respectfully dissent. In *Craig v. Rider*, 651 P.2d 397 (Colo.1982), we held that a trial court may consider a number of factors in determining whether to set aside an order admitting a will to probate. Those factors include the movant's negligence, the merit of the claim or defense, the opposing party's reliance on the order, and the prejudice to the opposing party caused by the passage of time. *Id.* at 402. We declined to hold that the trial court must consider and hear evidence on each factor, and noted that the movant's failure to satisfy even *one* of the criteria may justify denial of the movant's request to vacate the judgment. *Id.*

The majority holds that the trial court committed reversible error when it failed to consider each of the criteria set forth in *Craig*, and, in effect, creates the type of balancing test that we wisely disapproved of in *Craig*. We said in *Craig*:

[The plaintiff] argues that a balancing test must be utilized to guide the trial court's discretion in considering excusa-

ble neglect, meritorious defense, and possible prejudice to the parties. Our cases have never required this. Failure to satisfy even one of these criteria may result in denial of the movant's request to set aside a default for good cause.

651 P.2d at 402.

In the present case, the trial court balanced the impact of the dismissal against the defendant's ability to conduct an effective defense, and concluded that the prejudice to the defendant caused by the lapse of time outweighed the harm to plaintiff.[1] Although "a consideration of all [the] factors together ... [is] the preferable procedure in most cases," *Craig*, 651 P.2d at 402, the trial court did not abuse its discretion in this case. The difficult proof problems attendant to the defense of any "slip and fall" case are only exacerbated by the passage of time. Although the conduct of plaintiff's former attorney in this case cannot be condoned, I do not believe it appropriate to impose the burden of that conduct on the defendant. The trial court properly considered the prejudice to the defendant caused by the plaintiff counsel's failure to prosecute, and did not commit reversible error by denying the plaintiff's motion to vacate on that ground alone. Although we may quarrel with the trial court's conclusion, we should not substitute our judgment for that of the trial court on a discretionary ruling relating to the dismissal of a case for failure to prosecute.

---

1. After briefs were submitted and after a full hearing, the court found:

[T]he Court has previously allowed this action to continue on the active docket even though no substantive progress has occurred since 1978, and the case was filed in 1976. This matter was reinstated by the Court in 1981 upon the motion of the plaintiff without notice to the defendant. On November 26, 1982, the Clerk of the Court sent a notice to the parties advising that the case would be dismissed unless cause was shown by written motion why it should not be dismissed within thirty (30) days from November 26th. No written motion or other documents were received by the Court within that thirty-day period, and the action was dismissed on December 28, 1982. Subsequently the plaintiff filed a Motion Not to Dismiss which was denied on

January 26, 1983. On June 21, 1983, the plaintiff, by new counsel, filed the Motion for Relief from Order of Dismissal which is the subject of this hearing....

[The court] further finds that the client and attorney are virtually inseparable in the eyes of the law, and the legal system could not function effectively otherwise. The issues presented concern the right of the plaintiff to litigate her claim balanced against the ability of the defendant to conduct a defense. In this instance the prejudice to the defendant in attempting to defend such an old claim outweighs the harm to the plaintiff. Moreover, the plaintiff did not respond to the notice of pending dismissal within the time period prescribed. After being on the Court docket for seven years with no significant progress, the case must be terminated....

Accordingly, I would affirm the court of appeals.