**Daniel A. GEORGE, Appellant,**

v.

**LOCAL UNION NO. 639, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO, et al., Appellees.**

No. 94–7122.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1996.

Decided Nov. 5, 1996.

Daniel A. George, appearing pro se, was on the briefs for appellant.

Kenneth J. Nunnenkamp argued the cause, Washington, DC, for amicus curiae in support of appellant, with whom Liam O'Grady, Washington, DC, appointed by the court, was on the briefs.

Jonathan G. Axelrod, Washington, DC, argued the cause and filed the brief for appellees.

Before: EDWARDS, Chief Judge, WALD and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellant Daniel George, a member of Local 639 of the International Brotherhood of Teamsters ("Local 639" or "Local") filed suit against the Local and its officers for violations of sections 101, 201(c), and 501 of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 411, 431(c), 501 (1994). Appellant raised a wide array of claims, one of which was that the Local's officers breached their fiduciary duties under section 501 by paying "supplemental strike benefits" to striking employees. In discovery, a Local officer revealed that the payments were termed supplemental strike benefits to avoid the minimum wage requirements of the Fair Labor Standards Act and that these payments were sometimes listed as "office and administrative expenses" on the Local's annual financial reports (called "LM–2s").

The District Court granted summary judgment for appellant on the section 201(c) claims, finding that he had a right to examine the Local's books and records in order to verify the annual financial reports. The District Court stated that appellant had "rais[ed] several apparently significant deviations from the norm of the union's LM–2

reports ..., such as the disbursements of strike benefits." *George v. Local Union No. 639,* Civ. No. 90–0148–LFO, slip op. at 5, 1994 WL 762224 (D.D.C. May 10, 1994), *reprinted in* Joint Appendix ("J.A.") 821. The District Court then granted summary judgment for appellees on the claims under sections 101 and 501. The District Court stated that appellant's section 501 claims were unsubstantiated, and, in addition, that appellant had failed to satisfy the "good cause" requirement of section 501(b), 29 U.S.C. § 501(b) (stating that no suit shall be brought "except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte"). The District Court stated that the good cause standard requires that appellant demonstrate "a high probability that [his] allegations of impropriety are true." *George,* Civ. No. 90–0148–LFO, slip op. at 6, *reprinted in* J.A. 822. Appellant now challenges only the District Court's grant of summary judgment on the section 501 claims.

We hold that the District Court used the wrong standard in determining whether appellant established "good cause" under section 501(b). The good cause standard is a threshold requirement that a plaintiff can satisfy through an *ex parte* application. Given this, it would make little sense to require a plaintiff to show a high likelihood of success on the merits. We therefore adopt the good cause standard set out in *Horner v. Ferron,* 362 F.2d 224, 228–29 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966). Appellant's claim that appellees violated section 501 by paying supplemental strike benefits satisfies this standard; however, because the merits of this claim are unclear, we remand the matter to the District Court. As to appellant's other claims, we need not decide whether appellant established good cause, because it is clear that these claims lack merit and summary judgment in favor of appellees was proper.

## I. BACKGROUND

In June 1977, appellant Daniel George became president of Local 639. In June 1983, Phillip Feaster defeated George in a union election and became president of the Local.

On several occasions between 1985 and 1987, while Feaster was president, the Local's Executive Board voted to pay "supplemental strike benefits" to employees of Reliable Delivery and Charles County Bus. Apparently, the payments were termed supplemental strike benefits to avoid the minimum wage requirements of the Fair Labor Standards Act. J.A. 333. These payments were sometimes listed as "office and administrative expenses" on the Local's annual financial reports. *Id.*

On January 22, 1990, George filed suit against Local 639 and its officers, raising various claims under sections 101, 201(c), and 501 of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 411, 431(c), 501. The parties conducted extensive discovery and cross-moved for summary judgment. On May 10, 1994, the District Court granted summary judgment for appellant on the claims under section 201(c), and granted summary judgment for appellees on the claims under sections 101 and 501. In granting summary judgment for appellant on the section 201(c) claims, the District Court stated that appellant had "rais[ed] several apparently significant deviations from the norm of the union's LM–2 reports that are not explained on the face of the reports, such as the disbursements of strike benefits." *George,* Civ. No. 90–0148–LFO, slip op. at 5, *reprinted in* J.A. 821. The District Court then turned to the section 501 claims. Regarding these claims, the District Court held:

> Plaintiffs are not entitled to an accounting unless they have shown a high probability that their allegations of impropriety are true.... Analysis of plaintiffs' allegations here reveals that they are either unsubstantiated or insufficient to establish good cause for believing that a fiduciary duty has been breached.

*Id.* at 6–7, *reprinted in* J.A. 822–23. In rendering this decision, the District Court appears to have conflated its holding that appellant had not satisfied the good cause requirement of section 501(b) with a judgment on the merits in favor of appellees.

On appeal, appellant only challenges the District Court's grant of summary judgment on the section 501 claims. Brief for Appel-

lant Daniel George at 4. Appellant challenges the Local's payment of supplemental strike benefits, and also asserts that thirteen other actions of the Local violated section 501: (1) the payment of legal fees resulting from a lawsuit against the Local and one of its organizers; (2) the disappearance of $1,290 in union funds in 1982; (3) the appointment of business agents in 1983 and 1987, allegedly in violation of the Local's bylaws; (4) the appointment of the spouse of an officer to a temporary position in 1983; (5) the Executive Board's grant of vacation pay in 1983; (6) the Local's amendment of its bylaws in 1988; (7) the payments to shop stewards; (8) the payment of per diem and travel expenses to officers who were traveling out of town; (9) the payment of stipends and lost wages to three trustees; (10) the wage increases to officers; (11) the purchase and sale of union property without the approval of the Local's membership; (12) the alleged renting of the union hall to "insiders" at lower rates; and (13) the Local's payment of legal fees in this action. As noted above, the District Court considered these claims on the merits, and rendered a summary judgment in favor of appellees on all claims.

## II. ANALYSIS

It is unclear on what grounds the District Court meant to dispose of the section 501 claims. On the one hand, the District Court ruled that appellant had not established "good cause" under section 501: it stated that the good cause standard requires that appellant demonstrate "a high probability that [his] allegations of impropriety are true" and that appellant had not met this standard. *George,* Civ. No. 90–0148–LFO, slip op. at 6–8, *reprinted in* J.A. 822–24. This line of reasoning suggests that the District Court disposed of the section 501 claims on the basis that appellant failed to establish good cause. On the other hand, the District Court permitted extensive discovery and assessed the merits of appellant's claims in granting summary judgment in favor of appellees. We hold that the District Court erred in applying the good cause standard of section 501. However, as to all but one of appellant's claims—the supplemental strike bene-

fit claim—we need not decide whether appellant established good cause, because on the merits summary judgment was proper. Because the merits of the supplemental strike benefit claim are unclear, we will remand that claim to the District Court for further consideration.

Section 501(a) of the Labor–Management Reporting and Disclosure Act sets out the fiduciary duties of labor officers. 29 U.S.C. § 501(a). In order to enforce these duties, section 501(b) permits union members to sue officers who violate section 501(a) in order "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." *Id.* § 501(b). Section 501(b) states, however, that "[n]o such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte." *Id.* The statute does not define "good cause," and this circuit has not addressed the issue.

In *Horner v. Ferron,* the Ninth Circuit undertook the first exhaustive consideration of the good cause requirement of section 501(b). The court first noted that a district court may determine that a plaintiff has established good cause by looking at the verified complaint alone. *Horner,* 362 F.2d at 228. If, however, the district court holds a hearing, "the court may, if it chooses, look somewhat beyond the complaint" to determine whether the plaintiff has established good cause. *Id.* at 229. The *Horner* court stated that only a narrow range of defenses should be considered at a good cause hearing. If the defendant can establish, by undisputed affidavit, that the plaintiff is not a member of the union or that the action is barred by the statute of limitations, collateral estoppel, res judicata, or failure to comply with a condition precedent to bringing suit, then the plaintiff will not have satisfied the good cause standard. *Id.* The court stated that it is inappropriate at the good cause stage for the district court to consider "[d]efenses which require the resolution of complex questions of law going to the substance of the case." *Id.* In addition, "[d]efenses which necessitate the determination of a genuine issue of material fact, being beyond the

scope of summary judgment procedure, are *a fortiori,* beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed." *Id.* (footnote omitted); *see also Loretangeli v. Critelli,* 853 F.2d 186, 192 (3d Cir.1988) (adopting the *Horner* standard); *Erkins v. Bryan,* 663 F.2d 1048, 1053 (11th Cir.1981) (same), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). Thus, *Horner* makes clear that the good cause requirement of section 501(b) sets a low threshold, and that good cause should normally be evaluated at the outset of a case.

In *Dinko v. Wall,* 531 F.2d 68 (2d Cir. 1976), the Second Circuit departed from the *Horner* standard and held that a plaintiff must make a much greater showing to satisfy the good cause requirement of section 501(b). The court held that, in order to establish good cause, a "plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence." *Id.* at 75. In the present case, the District Court applied a standard akin to the *Dinko* standard, stating that "[p]laintiffs are not entitled to an accounting unless they have shown a high probability that their allegations of impropriety are true." *George,* Civ. No. 90–0148–LFO, slip op. at 6, *reprinted in* J.A. 822.

■ We adopt the *Horner* standard and therefore conclude that the District Court erred in setting out the good cause standard. The good cause standard is a threshold requirement that a plaintiff can satisfy through an *ex parte* application. It would therefore be illogical to impose a heightened pleading standard, requiring a plaintiff to show a high likelihood of success on the merits. *Loretangeli,* 853 F.2d at 191–92 ("The statutory permission for plaintiffs to file an ex parte application for leave to sue suggests a low level of judicial scrutiny at this point. The language of the statute certainly does not require that the district court then make a searching inquiry into the merits of the suit." (citation omitted)). Because the good cause requirement is a threshold inquiry, a district court judge should normally decide the issue before the parties conduct discovery. Thus, the fact that discovery had been conducted in

this case does not modify the good cause standard, as the standard does not vary depending upon whether or not there has been discovery.

■ Appellant's claim that appellees violated section 501 by paying "supplemental strike benefits" satisfies the *Horner* standard. Indeed, in its memorandum opinion, the District Court indicated that it had questions about this claim. *See George,* Civ. No. 90–0148–LFO, slip op. at 5, *reprinted in* J.A. 821 ("Plaintiffs have ... rais[ed] several apparently significant deviations from the norm of the union's LM–2 reports ..., such as the disbursements of strike benefits...."). The fact that the District Court granted relief under section 201(c) does not dispose of appellant's claim under section 501. As appellees conceded at oral argument, these two statutory provisions are distinct, as are the remedies available for breaches of each. *Compare* 29 U.S.C. § 431(c) (permitting suit to allow a union member, for just cause shown, "to examine any books, records, and accounts" to verify union's annual financial report, and permitting the court to grant attorney's fees and costs to the plaintiff) *with* 29 U.S.C. § 501(b) (permitting suit "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization"). We therefore remand the supplemental strike benefit claim to the District Court for consideration under section 501.

As to the remaining claims on this appeal, we need not decide whether appellant established good cause under section 501. We conclude, after reviewing the record *de novo, Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir. 1994), that on the merits summary judgment in favor of appellees was proper.

### III. Conclusion

We hold that the District Court erred in applying the good cause standard of section 501(b). We adopt the *Horner* standard, reverse the judgment in favor of appellees on the supplemental strike benefit claim, and remand this claim to the District Court for consideration under section 501. We find no merit in appellant's other claims, so we af-

firm the summary judgment granted in favor of appellees.